UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINH NHAT PHAN,<br><br>                                    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                                    Respondents. | Case No.:  3:25-cv-02422-RBM-MSB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

On September 16, 2025, Petitioner Minh Nhan Phan ("Petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging the lawfulness of his detention by United States Immigration and Customs Enforcement ("ICE").  (Doc. 1.)  At the same time, Petitioner filed a Motion for Temporary Restraining Order ("TRO Motion").  (Doc. 2.)  The Petition and TRO Motion seek the same relief—Petitioner's release from detention.  Respondents filed a Response in Opposition to Petitioner's Habeas Petition and Application for Temporary Restraining Order ("Response") (Doc. 6), and Petitioner filed a Traverse in Support of Petition for Writ of Habeas Corpus ("Reply") (Doc. 9.)

For the reasons set forth below, the Petition is **<u>GRANTED</u>**.

1

# I.    BACKGROUND

## A.    Factual Background

Petitioner is a refugee of Vietnam who fled to the United States as a child in 1981. (Doc. 1 at 25.)  Eight years later, when he was 19 years old, Petitioner was convicted of attempted second-degree murder.  (*Id.* at 3.)  He was transferred to Immigration and Naturalization Service ("INS") custody and ordered removed in September 1996.  (*Id.*)  INS detained Petitioner from 1996 to 2000 while it sought to remove him to Vietnam.  (*Id.* at 2.)  But at the time, Vietnam refused to accept for repatriation Vietnamese nationals who entered the United States as refugees before 1995.  (*Id.* at 4–5 n.2 & 3.)[1]  In February 2000, after over three years in INS custody, Petitioner prevailed on a habeas petition and was released on an Order of Supervision.  (*Id.* at 2.)  Petitioner complied with the conditions of his Order of Supervision for the next 25 years.  (*Id.*)  On September 5, 2025, ICE re-detained Petitioner to once again try to remove him to Vietnam.  (*Id.*; Doc. 6 at 1.)  According to his sworn declaration, Petitioner has not received an informal interview or had an opportunity to respond to the reasons for the revocation of his release.  (Doc. 1 at 27.)  According to Deportation Officer Jason Cole's sworn declaration, ICE is currently putting together a travel document request to send to Vietnam and is not seeking to remove Petitioner to a third country.  (Doc. 6-1 ¶¶ 6–9.)

## B.    Procedural Background

Petitioner filed the instant Petition against Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Jesus Rocha, and Christopher LaRose (collectively, "Respondents") (Doc. 1.)  Petitioner concurrently filed the TRO Motion, which largely repeats the allegations in the

---

[1]    *See* U.S. Embassy & Consulate in Vietnam, *Chronology of US-Vietnam Relations*, https://vn.usembassy.gov/chronology-of-u-s-vietnam-relations/; Agreement Between the Government of the United States of America and the Government of the Socialist Republic of Vietnam on the Acceptance of the Return of Vietnamese Citizens, art. II, March 22, 2008,      https://www.state.gov/wp-content/uploads/2019/02/08-322-Vietnam Repatriations.pdf.

Petition. (Doc. 2.) On September 18, 2025, the Court ordered Respondents to show cause why the Petition and the accompanying TRO Motion should not be granted by filing a written response. (Doc. 4 at 2–3.) On September 23, 2025, Respondents filed the Response. (Doc. 6.) On September 26, 2025, Petitioner filed the Reply. (Doc. 9.)[2]

## II.    <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III.    <u>DISCUSSION</u>

Petitioner argues that his detention unlawfully violates: (1) the regulations set forth in 8 C.F.R. § 241.4(l) and § 241.13(i); (2) Judge Keep's order in *Nguyen v. Fasano*, Case No. 99-cv-1885-K (S.D. Cal. Feb. 28, 2000), Dkt. No. 10; and (3) the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 2–3, 7–16.[3]) Petitioner also argues that ICE may not remove him to a third country without providing him with adequate notice and an opportunity to be heard. (*Id.* at 16–20.)

---

[2] Because the relevant facts do not appear to be in dispute, the Court declines to hold an evidentiary hearing. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

[3] The Court cites the paragraph numbers of the Petition and the CM/ECF electronic pagination for other citations unless otherwise noted.

Respondents do not meaningfully respond to Petitioner's arguments concerning ICE's regulatory violations. Rather, Respondents argue that Petitioner is properly detained under 8 U.S.C. § 1231(a) because "ICE revoked Petitioner's Order of Supervision for the purpose of executing his final order of removal." (Doc. 6 at 7.) Respondents also argue that Petitioner is jurisdictionally barred from bringing his claims under 8 U.S.C. § 1252(g), and that Petitioner's ongoing re-detention falls within the six-month detention period presumptively reasonable under *Zadvydas*. (*Id.* at 8–9.)

The Court finds that it has jurisdiction because the Petition challenges the manner in which ICE executed the removal order rather than the removal order itself, and that the Petition should be granted because ICE violated Petitioner's due process rights by failing to comply with 8 C.F.R. § 241.4(l) and § 241.13(i).

## A. Jurisdiction

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional argument. *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). For the reasons set forth below, the Court finds that it has jurisdiction over Petitioner's claims.

Respondents argue that the Court lacks jurisdiction to hear this Petition under 8 U.S.C. § 1252(g). (Doc. 6 at 3–4.) This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). However, the Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Petitioner does not challenge the legitimacy of his September 1996 order of removal. Rather, he challenges the legality of his detention, which does not require judicial review of the Attorney General's decisions to commence proceedings, adjudicate cases, or execute

4

removal orders. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025) (noting courts have "distinguished between challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the manner in which ICE executes the removal order, which are not.").

Respondents argue that Petitioner's claims "necessarily arise" from the Attorney General's decision to commence removal proceedings against him. (Doc. 6 at 4.) This interpretation of 8 U.S.C. § 1252(g) would "eliminate judicial review of immigration [detainees'] claims of unlawful detention . . . inconsistent with *Jennings v. Rodriguez* and the history of judicial review of the detention of noncitizens under 28 U.S.C. § 2241." *Sanchez v. LaRose*, Case No.: 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *Zadvydas*, 533 U.S. at 699; *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022)). Accordingly, as other courts in this District have found in similar cases, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241. *See Sanchez*, 2025 WL 2770629, at *2; *Alegria Palma v. LaRose*, Case No. 3:25-cv-1942-BJC-MMP (S.D. Cal. Aug. 11, 2025), Dkt. No. 14; *Rokhfirooz v. LaRose et al.*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025).

**B.    Due Process**

Petitioner challenges his detention as unlawful based on ICE's decision to revoke his release without providing the required opportunity to be heard. (Doc. 1 at 7–9.) Petitioner's claims therefore implicate the Due Process Clause. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. *Zadvydas*, 533 U.S. at 693–94. The fundamental requirements of due process are that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

The detention and release of noncitizens who are subject to a final order of removal

are governed by 8 U.S.C. § 1231. Under that statute, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," also known as the "removal period." 8 U.S.C § 1231(a)(1)(A). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Those regulations, which govern release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. § 241.4 and § 241.13. Both § 241.4 and § 241.13 were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). The Parties discuss both regulations in their filings, and it is unclear from the record which regulation controls. Under either regulation, however, ICE failed to comply with the required procedures, thereby violating Petitioner's due process rights.

### 1. 8 C.F.R. § 241.4

In relevant part, release may be revoked under 8 C.F.R. § 241.4 when the Executive Associate Commissioner or a district director believes revocation "is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]." 8 C.F.R. § 241.4(l)(2)(iii). "Upon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release or parole" and "will be afforded an initial informal interview promptly after his or her return" to be given "an opportunity to respond to the reasons for revocation stated in the notification." § 241.4(l)(1).

Petitioner argues his re-detention is procedurally deficient because he has not received any interview, much less a prompt one, to respond to the reasons for the revocation of his release. (Doc. 1 at 27.)[4] Petitioner was taken into ICE custody on September 5,

---

[4] The Court does not address whether ICE complied with the requirement that, "upon revocation," the noncitizen "will be notified of the reasons for revocation of his or

2025, which means ICE has had over a month to provide to Petitioner the required interview and opportunity to respond. (*Id.*) Respondents do not argue to the contrary. Instead, they represent only that "ICE revoked Petitioner's Order of Supervision for the purpose of executing his final order of removal" and that they are "working expeditiously to acquire the necessary travel document in order to effectuate Petitioner's removal to Vietnam." (Doc. 6 at 7.) Because ICE failed to comply with 8 C.F.R. § 241.4(l), Petitioner's detention is unlawful. *See M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (finding an informal interview given 27 days after petitioner was taken into ICE custody "cannot reasonably be construed as . . . prompt" and granting habeas petition); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner likely to succeed on his claim that his detention was unlawful "[b]ecause there is no indication that an informal interview was provided"); *Liu v. Carter*, Case No. 25-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding "that officials did not properly revoke petitioner's release" because "most obviously . . . petitioner was not granted the required interview upon the revocation of his release")).

### 2.    8 C.F.R. § 241.13

Section 241.13 provides "special review procedures" that apply where, among other conditions, a noncitizen "has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). "The Service may

---

release." 8 C.F.R. §§ 241.4(l)(2)(iii), 241.13(i)(3). Petitioner focuses his argument on the interview and opportunity to respond requirement, except for one sentence in the Petition stating that "[d]espite being released subject to court-ordered regulatory requirements of notice and an interview before he is re-detained, Mr. Phan has been re-detained without such process." (Doc. 1 at 8.) Respondents did not file a Notice of Revocation of Release, nor did they attempt to argue that Petitioner was provided such notice. On the record before it, the Court also would find the lack of notice violates the regulatory requirements.

revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2).  This section has the same requirements as 8 C.F.R. § 241.4 in that, "[u]pon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release" and "will be afforded an initial informal interview promptly after his or her return" to be given "an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3).

As discussed above, ICE's failure to provide an interview and opportunity to respond is reason enough to find Petitioner's detention unlawful.  Under 8 C.F.R. § 241.13(i)(2), there is an additional problem: Respondents cannot show that "on account of changed circumstances, the Service determine[d] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2).

The DHS Form I-213 documenting Petitioner's arrest does not indicate that ICE made such a determination.  (*See* Doc. 6-2.)  It indicates only that ICE "determined that PHAN is not in possession of valid immigration documents allowing him to legally enter or reside in the United States." (*Id*. at 4.)  The Warrant for Arrest of Alien, issued on a DHS Form I-200, likewise does not describe such a determination having been made.  (*Id*. at 8.)  And the sworn declaration of Deportation Officer Cole states only that ICE Enforcement and Removal Operations ("ERO") is "working expeditiously to effectuate Petitioner's removal to Vietnam.  These removal efforts remain ongoing.  ERO is currently putting together a travel document request to send to [the] Vietnam embassy. . . ." (Doc. 6-1 ¶¶ 8–10.)  With these statements, Respondents: (1) concede they have not yet submitted a travel document request to Vietnam; (2) provide no estimate or sense of timing as to Petitioner's removal; and (3) fail to indicate any "changed circumstances" that show there is now a significant likelihood of Petitioner's removal.  As discussed above, Petitioner entered the United States as a refugee in 1981.  (Doc. 1 at 25.)  Because Vietnam refused to accept for repatriation Vietnamese nationals who entered the United States as refugees

before 1995, Petitioner already spent over three years in custody while INS tried and failed to secure travel documents for Vietnam. (*Id.* at 2–5.) Respondents have not explained why obtaining a travel document for Vietnam is more likely this time around. *Accord Hoac*, 2025 WL 1993771, at *4 (finding "Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance" such that "there is now a significant likelihood Petitioner will be removed to Vietnam in the reasonably foreseeable future"). Thus, nothing in the record shows "a significant likelihood" that Petitioner "may be removed in the reasonably foreseeable future" on account of "changed circumstances." *See* 8 C.F.R. § 241.13(i)(2).

Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (quoting *Ramon–Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984)). ICE failed to do so here. The Court's research indicates that every district court, except one[5], to consider the issue has "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz*, 2025 WL 2646165, at *4; *see, e.g.*, *Rombot v. Souza*, 296 F. Supp. 3d 383, 387–88 (D. Mass. 2017) (ordering the petitioner released where, "[b]ased on ICE's violations of its own regulations, the Court concludes [the petitioner's] detention was unlawful"); *K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"); *Grigorian v. Bondi*, CASE NO. 25-cv-22914-RAR, 2025 WL 2604573, at *10 (S.D. Fla. Sept. 9, 2025)

---

[5] *See Medina v. Noem*, Case No. 25-cv-1768-ABA, 2025 WL 2306274, at *12 (D. Md. Aug. 11, 2025). But even in *Medina*, the petition was denied without prejudice because the petitioner "has not pointed to authority showing that the remedy for a violation of [§ 241.4] (if such a violation has occurred) is release from detention." *Id.* at *11. Here, Petitioner has. (*See* Doc. 1 at 3, 7; Doc. 9 at 2, 4–6.)

("The failure to provide [the petitioner] with an informal interview promptly after his detention or to otherwise provide a meaningful opportunity to contest the reasons for revocation violates both ICE's own regulations and the Fifth Amendment Due Process Clause. This compels [the petitioner's] release.").

This Court reaches the same conclusion. ICE's failure to comply with both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 violated Petitioner's due process rights. *See Diaz*, 2025 WL 2581575, at *7 ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L.*, 2025 WL 2430267, at *11 ("ICE's failure to provide Petitioner with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking her into custody is a grave violation of Petitioner's due process rights in that they deprived her both of meaningful notice and an opportunity to be heard.").

Accordingly, the Petition is **GRANTED**. In light of the disposition herein, the Court declines to address the remaining grounds in the Petition for seeking release: whether Petitioner's detention violates Judge Keep's order, whether Petitioner's detention violates *Zadvydas*, and whether ICE may remove Petitioner to a third country.

### IV. CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.

2. Petitioner's TRO Motion (Doc. 2) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE: October 10, 2025

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE